ORIGINAL

MICHAEL JAY GREEN        4451
345 Queen Street, Second Floor
Honolulu, Hawaii 96813
Telephone No.: (808) 521-3336
Facsimile No.: (808) 566-0347
Email: michaeljgreen@hawaii.rr.com

ROBIN MELCHOR           7616
500 Ala Moana Boulevard
Suite 330, 5 Waterfront Plaza
Honolulu, Hawaii 96813
Telephone No.: (808) 523-1332
Facsimile No.: (808) 526-2275
Email: melchorr@aloha.net

Attorneys for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 05 2009

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of BAD BOY'S TRUCKING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DELTA CONSTRUCTION CORPORATION; FOREST CITY HAWAII, LLC; and DOE DEFENDANTS 1-50, <br><br> Defendants. | CIVIL NO. CV09-00255 ACK BMK <br> (Miller Act / Contract) <br><br> COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |

## COMPLAINT

UNITED STATES OF AMERICA for the use and benefit of Plaintiff BAD BOY'S TRUCKING, INC. ("Use Plaintiff"), by and through its undersigned counsel, for a Complaint against the above-named Defendants, jointly and severally, alleges and avers as follows:

I.    PARTIES

1.    Use Plaintiff is and was at all times relevant a domestic profit corporation organized under the laws of the State of Hawaii and doing business within the State of Hawaii.

2.    Upon information and belief, Defendant **DELTA CONSTRUCTION CORPORATION** ("Delta"), is, and at all relevant times was, a corporation duly authorized to do business, and which does business in the State of Hawaii.

3.    Upon information and belief, Defendant **FOREST CITY HAWAII, LLC** ("Forest City"), is, and at all relevant times was, a corporation duly authorized to do business, and which does business in the State of Hawaii.

4.    DOE DEFENDANTS 1-50 are sued herein under fictitious names for the reason that despite diligent and good faith efforts to obtain information, their true names and identities are presently unknown to Plaintiff, except that they are or were connected in some manner with the other parties to this action, or in some manner presently unknown to Plaintiff are or were engaged in the activities alleged and/or were in some manner responsible for the injuries and/or damage to Plaintiff and/or in some manner are or may be related to and jointly liable with one or more of the other parties to this action.  Counsel for Plaintiff have diligently attempted to discover the identities of these defendants by reviewing documents from Plaintiff

and communicating with Plaintiff.  The identities may be disclosed by discovery and Plaintiff reserves the right to identity Doe Defendants at that time.

II.   JURISDICTION

5.    Jurisdiction over this matter is proper pursuant to the Federal Miller Act 40 U.S.C. §3131, et seq. in that the matter in controversy is nonpayment for labor and/or materials in excess of $100,000 furnished for a federal government contract involving the projects at the Department of the Navy - Hawaii Regional Housing PPV, Increment II, Waikulu & Kapoho, Kaneohe Marine Corps Base, Hawaii, Kaneohe Bay, Oahu, HI ("Project").

6.    Venue is proper in this Court as the contract for which the Miller Act payment bond was issued was performed within this judicial district of the United States.

7.    Further, this Court has supplemental and pendant jurisdiction over this action pursuant to 28 U.S.C. § 1367, in that certain claims which are not subject to the Miller Act, but are pendant and joined to this action as being derivative from the common operative facts of the Miller Act claim and therefore form part of and are ancillary to, the same case and controversy as the primary action.

III.   FACTS

8.    Upon information and belief, the United States Navy ("Navy") entered into a contract with Forest City in or about November 2007 to act as the general contractor on the Project ("Prime Contract").

9.    Upon information and belief, in or about November 2007, Forest City contracted with Delta to act as a subcontractor on the Project.

10.   Pursuant to 40 U.S.C. §3131(b) of the Miller Act, Forest City was required to execute and deliver a Payment Bond and a Performance Bond for the

Project to the Navy for the protection of subcontractors, laborers, and materialmen furnishing labor, services, materials, and equipment and supplies provided for in the Prime Contract with the Navy and whereby Forest City and the surety bound themselves jointly and severally for the purpose of allowing a joint action or actions against any or all of them and bound themselves in a sum of money equal to the Prime Contract price.

11.    In furtherance of performing the Project, Forest City executed contracts with subcontractors and suppliers to perform labor and provide materials for the Project, including Delta.

12.    In or about November 2007, Delta executed a purchase order agreement ("Purchase Order") with Bad Boy's Trucking, Inc. ("Bad Boy") to provide onsite hauling and surplus disposal services for the Project. Delta agreed to pay Bad Boy any outstanding balance on the Purchase Order which came due as a result of labor, services, materials, equipment and supplies Bad Boy furnished to the Project.

13.    From November 2007 through August 2008, Bad Boy, and its subcontractors, provided hauling, disposal services, equipment, and material services for Defendant Delta on the Project.

14.    Bad Boy timely billed Defendant Delta for these services. Bad Boy further submitted regular statements to Delta detailing Bad Boy's work, any missed payments by Delta, and finance charges imposed by Bad Boy due to the missed payments. Delta never objected to Bad Boy's invoices or statements.

15.    In January of 2008, Delta requested a temporary reduction in the contracted hourly rate for services rendered by Bad Boy because Delta was operating in the red and could not pay Bad Boy's outstanding invoices.

- 4 -

16.    Delta told Bad Boy that if they did not accept the partial payment, Delta would not be able to pay the invoices.

17.    Bad Boy agreed to accept partial payment but at no time did it waive its rights to demand payment in full on the outstanding balance.

18.    Although Bad Boy has received partial payments on several of its open invoices, Delta has failed to pay Bad Boy for all of the hauling and disposal services provided under the Purchase Order in an amount to be proven at trial.

19.    The terms and conditions of Bad Boy's services provided for a 2% interest charge per month on all invoices over 30 days of the invoice date.

20.    Use Plaintiff has provided all of the labor, services, materials, equipment and supplies Delta requested on the Project.

21.    When Bad Boy demanded payment on the outstanding invoices, Delta informed Bad Boy that it no longer needed its services for the Project.

22.    Within ninety days after furnishing or supplying the last of the labor and materials for the Project, Use Plaintiff duly notified Delta of the amounts due and owing for the Project.

23.    To date, the principal sum of $481,319.00 is still due, owing, and unpaid to Use Plaintiff.

24.    Despite Use Plaintiff's demands for payment, Delta continues to fail and refuses to pay the remaining amounts due and owing to Use Plaintiff.

25.    One year has not expired from the day on which the last of the labor and materials for the Project were supplied or furnished by Use Plaintiff, and a period of ninety (90) days followings the day on which the last labor and materials were supplied or furnished by the Use Plaintiff has expired.

IV.   CAUSES OF ACTION

COUNT I
MILLER ACT

26.   Use Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 25 above as if said paragraphs were fully set forth herein.

27.   Bad Boy, and its subcontractors, performed services for Delta on the Project that constitute "labor" and furnishing of "material" subject to the protections of the Miller Act, 40 U.S.G. §3131 et seq.

28.   As a subcontractor with a direct contractual relationship with Delta, Bad Boy has submitted demand for payment to Delta.

29.   Use Plaintiff last furnished labor, services, materials, equipment or supplies to the Project within one (1) year immediately preceding the filing date of this Complaint.

30.   A period of ninety (90) days has elapsed since Use Plaintiff last provided labor, services, materials, equipment or supplies to Delta for inclusion in the Project.

31.   Although Use Plaintiff has received partial payments on several of its open invoices, Delta has refused to pay Use Plaintiff for all of the hauling and disposal services provided by Bad Boy, and its subcontractors, for the Project.

32.   Pursuant to the Miller Act, 40 U.S.C. §3131 et seq., Bad Boy is entitled to recover all amounts due and owing from the surety under the Payment Bond in an amount to be proven at trial, together with interest at the maximum legal rates, costs and fees, and all such additional remedies as the Court deems proper.

## COUNT II
## BREACH OF CONTRACT

33.    Use Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 32 above as if said paragraphs were fully set forth herein.

34.    In or about November 2007, Delta executed a Purchase Order with Use Plaintiff, whereby Use Plaintiff agreed to provide onsite hauling and surplus disposal services for the Project, and Delta agreed to compensate Use Plaintiff for the labor, services, materials, equipment and supplies provided.

35.    Use Plaintiff has fully complied with and fully performed all of its obligations under the Purchase Order.

36.    By failing and/or refusing to pay the amounts due and owing to Use Plaintiff, Delta has failed to perform its obligations under the Purchase Order and has therefore materially breached the terms of the Purchase Order.

37.    As a direct, proximate, and foreseeable result of Delta's breach of the Purchase Order, Use Plaintiff has been damaged in an amount to be determined at trial, but at least $481,319.00, together with interest at the maximum legal rates.

38.    In accordance with Hawaii law, because Use Plaintiff's claim is in the nature of assumpsit, Use Plaintiff is also entitled to an award of its reasonable costs of suit, including attorney's fees.

## COUNT III
## QUANTUM MERUIT / UNJUST ENRICHMENT

39.    Use Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 38 above as if said paragraphs were fully set forth herein.

40.    Since November 2007, Use Plaintiff, and its subcontractors, have provided labor, services, materials, equipment, and supplies for the Project as requested by Delta.

41.    Defendants have benefitted from Use Plaintiff providing labor, services, materials, equipment, and supplies for the Project as requested.

42.    The labor, services, materials, equipment, and supplies provided by Use Plaintiff for the Project have enabled Defendants to fulfill certain obligations owed to the Navy under the Prime Contract.

43.    Defendants have failed to fully compensate Use Plaintiff for this benefit received.

44.    Defendants would be unjustly enriched if it is allowed to retain this benefit without fully compensating Use Plaintiff for all labor, services, materials, equipment, and supplies provided by the Use Plaintiff for the Project.

45.    There exists an implied contract under which Defendants agreed to fully compensate Use Plaintiff for all labor, services, materials, equipment, and supplies provided by the Use Plaintiff for the Project.

46.    The total and reasonable value of the labor, services, materials, equipment, and supplies furnished by Use Plaintiff to Defendants for inclusion in the Project is not yet ascertained, but is at least $1,242,760.65.

47.    To date, only $761,441.65 has been paid to Use Plaintiff by Delta.

48.    Defendants are therefore liable to Use Plaintiff for an amount to be determined at trial, but at least $481,319.00, together with interest at the maximum legal rates, attorney's fees, and costs.

V.    PRAYER FOR RELIEF

WHEREFORE, Use Plaintiff prays for relief against the above-named Defendants, jointly and severally, as follows:

a.    The Court enter judgment in favor of Use Plaintiff and against Defendants on each Count of the Complaint;

b.    For compensatory, general and special damages in an amount to be shown at trial;

c.    Statutory attorneys' fees and costs of this action;

d.    Prejudgment and postjudgment interest in the maximum amount provided by law; and

e.    Such other and further relief as this Court deems just and proper under the circumstances.

DATED:  Honolulu, Hawaii, _____June    5_____, 2009.


_____
MICHAEL JAY GREEN
ROBIN MELCHOR
Attorneys for Use Plaintiff


- 9 -